IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  17-cv-00637-RM-MJW

SAMUEL J. MAY,

Plaintiff,

v.

UNITED STATE OF AMERICA;
THE DEPARTMENT OF JUSTICE, an agency of the United States;
THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, an agency of the United
States;
FOOD AND DRUG ADMINISTRATION, an agency of the United States;
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, an agency of the United
States;
DEBORAH ZWANY, in individual capacity, Department of Justice;
SARA WINSOW, in individual capacity, Department of Justice;
PATRICK HANNIGAN, in individual capacity, Office of Criminal Investigations;
OMOTUNDE OSUNSANMI, in individual capacity, Food and Drug Administration; and
AMGEN USA INC., et al., a California and Delaware Corporation,

Defendants.

REPORT AND RECOMMENDATION ON THE PARTIES' MOTIONS
(DOCKETS NOS. 15, 16, 17, 22, 25, 42, & 43)

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before the Court pursuant to an Order Referring Case entered by

Judge Raymond P. Moore on March 22, 2017. (Docket No 7.) Now before the Court are

seven motions, all of which have been referred to the undersigned Magistrate Judge.

(Docket Nos. 19, 24, 26, 44 & 45:) They are, in chronological order:

- Plaintiff Samuel J. May's ("Plaintiff") Unopposed Motion for Declaratory

    Judgment Directing Payment of Qui Tam Share of Alternate Remedy

    Proceeds, filed on May 1, 2017 (Docket No. 15);

- Plaintiff's Unopposed Notice of Motion and Motion for an Evidentiary Hearing Pursuant to 28 U.S.C. § 2202 and 31 U.S.C. § 3730(c)(2)(B), in Support of Concurrent Motion for Declaratory Judgment Directing Payment of Qui Tam Share, filed on May 1, 2017 (Docket No. 16);

- Plaintiff's Unopposed Notice of Motion and Motion for Declaratory Relief Requesting Judicial Notice of the Dismissed Qui Tam Complaint in Support of Motion for Relator Share and Hearing, filed on May 1, 2017 (Docket No. 17);

- Defendant Amgen USA Inc.'s ("Amgen") Motion to Dismiss, filed on May 1, 2017 (Docket No. 22), to which Plaintiff filed a response (Docket No. 33), and Amgen filed a reply (Docket No. 33);

- Amgen's Motion for Attorney Fees, filed on May 2, 2017 (Docket No. 25);

- Defendants United States of America, U.S. Department of Justice, and U.S. Department of Health and Human Services' (collectively the "Federal Defendants") Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)(b), filed August 25, 2017 (Docket No. 42), to which Plaintiff filed a response (Docket No. 46); and

- The Federal Defendants' Partial Motion for Summary Judgment, filed August 25, 2017 (Docket No. 43), to which Plaintiff filed a response (Docket No. 47).

The Court has taken judicial notice of the Court's file and has considered the applicable Federal Rules of Civil Procedure and case law. The Court now being fully informed makes the following findings of fact, conclusions of law, and recommendation.

## I. BACKGROUND

In his Complaint (Docket No. 1), Plaintiff essentially combines into one pleading two separate legal proceedings that he has pursued for several years in various trial and appellate courts. One relates to litigation surrounding an arbitration award entered in Amgen's favor as to employment claims brought by Plaintiff. The other is a *qui tam* False Claims Act ("FCA") action Plaintiff brought against Amgen. Both cases have run their course, but Plaintiff seeks further redress in this Court.

Plaintiff was employed by Amgen as a Validation Specialist/Engineer III from April 2002 through June 2006. (Docket No. 1 at ¶ 63.) After Plaintiff's employment ended, he filed a lawsuit in California state court against Amgen. (Docket No. 22-1.)[1] That lawsuit was dismissed because the parties had entered into an arbitration agreement. (Docket No. 1 at ¶78.) Following a three-day arbitration hearing, on October 14, 2011, the arbitrator ruled against Plaintiff and in favor of Amgen on Plaintiff's one remaining claim for Constructive Termination in Violation of Public Policy. (Docket No.

---

[1] The Court takes judicial notice of the various state and federal civil proceedings involving Plaintiff and their related records. *See Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record.") (citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001). Because the Court may consider judicially noticed facts at the motion to dismiss stage, it need not convert the motions to dismiss into ones for summary judgment. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (permitting judicial notice of facts in motions to dismiss). Moreover, Plaintiff refers to the legal proceedings throughout his Complaint, providing the Court with a second basis for considering those filings without converting Amgen's motion to dismiss into a motion for summary judgment. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (explaining that courts may consider documents referenced in a complaint at the motion to dismiss stage). Finally, Plaintiff himself requests that the Court take judicial notice of the *qui tam* action. (Docket No. 17 at p. 3.)

22-4.) Plaintiff's motion to reconsider the arbitration award was subsequently denied. (Docket No. 22-5.)

On February 24, 2012, Amgen filed a Motion to Confirm the Arbitration Award in the Denver District Court (Docket No. 22-6), which was granted on March 23, 2012. (Docket No. 22-10.) Rather than challenge Amgen's motion in Colorado state court, on March 16, 2012, Plaintiff initiated a proceeding to vacate or modify the arbitration award in the United States District Court for the Northern District of California, Civil Action No. 12-cv-01367. (Docket Nos. 22-7 - 22-9.) Then, on April 13, 2012, Plaintiff sought to vacate the arbitration award in the Denver District Court. (Docket No. 22-11.) Plaintiff's request was rejected as untimely. (*Id.*)

On June 14, 2012, Judge William Alsup of the Northern District of California dismissed Plaintiff's petition to vacate or modify the arbitration award. *See May v. Amgen*, No. 12-cv-01367, 2012 WL 2196151 (N.D. Cal. June 14, 2012) (unpublished) (also filed at Docket No. 22-12). Judge Alsup decided on the merits of the petition, despite finding it "disturbing that plaintiff has fled from the Colorado state court and come here seeking yet another opinion on his case[,]" and recognizing that "[a] strong abstention argument is made[.]" *Id.* at *4. He ultimately concluded, "This is a case in which both sides received a fair hearing and the losing side simply refuses to accept the outcome." *Id.* at *7.

The Ninth Circuit Court of Appeals affirmed the district court's order on March 18, 2014. *May v. Amgen*, Inc., 564 F. App'x 313, 314 (9th Cir. 2014) (unpublished) (also filed at Docket No. 22-13). The United States Supreme Court denied Plaintiff's petition

for writ of certiorari on March 2, 2015. *May v. Amgen*, 135 S. Ct. 1493 (2015) (also filed at Docket No. 22-14). His motion for reconsideration was also denied. *May v. Amgen*, 135 S. Ct. 1889 (2015) (also filed at Docket No. 22-15).

After yet another motion to reconsider was denied in the Northern District of California and subsequently appealed, Judge Alsup revoked Plaintiff's *in forma pauperis* status. (Docket No. 22-17.) Plaintiff's second appeal and request for a panel rehearing were rejected by the Ninth Circuit. (Docket Nos. 22-18 & 22-19.)

While the arbitration proceedings were winding their way through the various courts, Plaintiff was also pursuing a *qui tam* FCA action against Amgen in the Northern District of California, which he brought *pro se* on June 11, 2010. (Docket Nos. 22-20 - 22-22.) Plaintiff alleged that Amgen had manufactured tainted and nonconforming drugs and failed to comply with tracking procedures. (Docket No. 22-20 at pp. 9-11.) On September 28, 2010, the United States declined to intervene in the action, and suggested to the district court that the case be dismissed unless Plaintiff obtained counsel. (Docket No. 22-23.) The action was unsealed on October 31, 2011,the district court informed Plaintiff that his case would be dismissed if he did not obtain counsel within 60 days. (Docket No. 22-24 at p. 4.) On January 5, 2012, Plaintiff's *qui tam* lawsuit was dismissed without prejudice for lack of prosecution because Plaintiff had not retained counsel. (Docket No. 22-25.)

Plaintiff's attempt to reopen the case four years later was summarily denied by Judge Alsup because he "still has not retained counsel, and his filings are untimely and plainly frivolous." (Docket No. 22-34.) On appeal, the Ninth Circuit informed Plaintiff that

he cannot maintain a *qui tam* suit *pro se.* (Docket No. 22-35.) On March 2, 2015, his appeal was dismissed when no counsel had entered an appearance. (Docket No. 22-36.)

On December 13, 2012, Amgen and the United States entered into a settlement agreement in which Amgen agreed to pay a civil fine of $612,174,030 to resolve a number of pending *qui tam* actions concerning Amgen's off-label marketing activities. (Docket No. 22-37 at p. 7.) Plaintiff was not a party to the settlement agreement. (*Id.* at pp. 1-2.)

Plaintiff's Complaint seeks his "relator share" of that settlement. He requests between 25 and 35 percent of the entire proceeds or, in the alternative, a proportionate award of Amgen's total value. (Docket No. 1 at p. 32.) Plaintiff brings seven claims for relief against Amgen and the United States: (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Fraud and Fraudulent Concealment; (4) Breach of Fiduciary Duty; (5) Conversion; (6) Intentional Infliction of Emotional Distress (Outrageous Conduct); and (7) Negligent Infliction of Emotional Distress.[2]

## II. ANALYSIS

### a. Amgen's Motion to Dismiss (Docket No. 22)

Amgen seeks to dismiss Plaintiff's Complaint on several grounds. First, Amgen argues that Plaintiff cannot maintain a claim against Amgen for a portion of the proceeds of the *qui tam* FCA settlement agreement. Second, Amgen asserts that any

---

[2] Plaintiff did not serve process on four defendants: Deborah Zwany, Sara Winslow, Patrick Hannigan, and Omotunde Osunsanmi.

claim arising from the arbitration proceeding and subsequent litigation is barred by issue and claim preclusion. Third, Amgen argues that Plaintiff's claims for relief are barred by the statute of limitations. Finally, Amgen states that Plaintiff's specific claims for relief fail as a matter of law.

### i. Standard of Review

As an initial matter, the Court notes that Plaintiff is proceeding *pro se*. The Court must liberally construe the pleadings of a *pro se* plaintiff. *Haines v. Kerner*, 104 U.S. 519, 520–21 (1972). Nevertheless, the Court cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

Amgen brings its motion pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In assessing a motion to dismiss under Rule 12(b)(6), the usual rule is that a court should consider no evidence beyond the pleadings. *See Alvarado v. KOB–TV,*

*L.L.C.*, 493 F.3d 1210, 1216 (10th Cir.2007). If, on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). As noted above, however, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1216 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). *See also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997)("[i]f a document is referenced in and central to a complaint, a court need not convert the motion but may consider that document on a motion to dismiss.). In addition, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir.2006).

### ii. Plaintiff's Claim for *Qui Tam* Settlement Money

Amgen argues that to the extent that Plaintiff's Complaint can be interpreted as asserting a claim against Amgen for a portion of the settlement proceeds, it must be dismissed because the United States, not Amgen, is responsible for paying relators who successfully bring a FCA action. The Court agrees. Notwithstanding the fact that Plaintiff has not sufficiently alleged that he is entitled to any portion of the settlement proceeds (as further discussed below), even if he was, Amgen is not the proper defendant to sue. Amgen paid the settlement funds to the United States. (Docket No. 22-37 at p. 7.) By statute, the United States is responsible for paying the relators' share.

*See* 31 U.S.C.A. § 3730(d). Plaintiff acknowledges as much in his Complaint. (Docket No. 1 at ¶ 88.) Accordingly, Plaintiff cannot maintain a claim against Amgen for his claim to a relators' share of the settlement money.

Amgen also argues that if Plaintiff's Complaint is construed as attempting to bring a new *qui tam* action or revive his old one, he is time barred. The Court finds that not only would such a claim time-barred, it would also be groundless and frivolous. As Plaintiff has been informed multiple times, a *pro se* plaintiff cannot prosecute a *qui tam* action. Plaintiff proceeds *pro se*. Therefore, by law, he cannot maintain any *qui tam* claim, new or old.

### iii. Plaintiff's Claims Arising Out of the Arbitration Proceedings

In an extremely convoluted way, Plaintiff's Complaint seems to assert that the order confirming the arbitration award somehow entitles him to a relators' share of the settlement funds. (Docket No. 1 at ¶¶ 18, 83-84, 96-97, 105-06, 115-16, 124, 142-43.) The Court cannot see how this could be the case, given that the two proceedings were wholly unrelated. Moreover, the Court notes that Amgen, not Plaintiff, prevailed in the arbitration.

The Complaint also challenges the fairness and propriety of the arbitration proceedings. (*Id.* at ¶¶ 22-29.) Plaintiff does not appear to bring any specific claims for relief based upon these allegations, but, out of caution, the Court finds that Plaintiff is barred from relitigating any claims stemming from his arbitration with Amgen. Any such claim would be untimely. *See* 9 U.S.C. § 12 (requiring that notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney

within three months after the award is filed or delivered). It would also run afoul of the doctrines of issue and claim preclusion, as both the Denver District Court and the Northern District of California, in cases involving the same parties and the same claims and issues, rejected Plaintiff's challenges to the arbitration award. *See Park Lake Res. Ltd. Liab. v. U.S. Dep't Of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (discussing the doctrines of claim and issue preclusion). Plaintiff had an opportunity to litigate these issues, and he lost. As Judge Alsup noted, Plaintiff continues to refuse to accept the outcome.

### iv. The Statute of Limitations

Next, Amgen argues that Plaintiff's Complaint is barred by the statute of limitations. Plaintiff's specific claims for relief are governed by a two-year (negligence and outrageous conduct) and a three-year (contract, fraud, misrepresentation, conversion and breach of fiduciary duty) statute of limitations. *See* Colo. Rev. Stats. § 13-80-101(a), (c), (f) and (h). Tort claims accrue "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." *Id.* § 13-80-108(1). Fraud claims accrue "on the date such fraud . . . is discovered or should have been discovered by the exercise of reasonable diligence." *Id.* § 13-80-108(3). Breach of contract claims accrue "on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence." *Id.* § 13-80-108(6). Claims for conversion accrue "at the time the wrongful possession is discovered or should have been discovered by the exercise of reasonable diligence." *Id.* § 13-80-108(7).

Plaintiff filed this lawsuit on March 10, 2017. Thus, his claims are required to have accrued after March 10, 2014, and March 10, 2015, respectively. Plaintiff's claims all center around being shut out from the *qui tam* FCA settlement agreement, which was entered into in December 2012. Plaintiff was undisputably aware in March 2012 that Amgen and the United States had entered into an agreement in principle to settle *qui tam* actions. (Docket No. 22-7.) However, Plaintiff alleges that he was not aware of the specifics of the settlement agreement until November 2015. (Docket No. 47 at 11.) Thus, a factual dispute exists, and "[i]ssues such as when a cause of action accrues, whether a claim is barred by a statute of limitations, and whether a statute of limitations should be equitably tolled, are issues of fact." *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 853 (Colo. App. 2007). On the information before it, the Court cannot determine as a matter of law that Plaintiff's specific claims are barred by the statute of limitations.

### v. Plaintiff's Specific Claims for Relief

Finally, Amgen argues that none of Plaintiff's specifically enumerated claims state a claim upon which relief can be granted. The Court addresses each in turn.

### A. Breach of Contract and Breach of Good Faith and Fair Dealing

Under Colorado law, a breach of contract claim has four elements: "'(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.'" *Contrada, Inc. v. Parsley*, No. 10–cv–00646–WYD–CBS, 2012 WL 573918, at *2 (D. Colo. Feb. 22, 2012) (citing *Western Distrib. Co. v.*

*Diodosio*, 841 P.2d 1053, 1058 (Colo.1992)). "A contract is formed when one party makes an offer and the other accepts it, and the agreement is supported by consideration." *Legro v. Robinson*, 2012 COA 182, ¶ 50, 328 P.3d 238, 246, *aff'd but criticized*, 2014 CO 40, ¶ 50, 325 P.3d 1053 (citation omitted).

Here, Plaintiff does not sufficiently allege that he entered into a valid contract with Amgen for the payment of the settlement proceeds. Indeed, Amgen could not have entered into such a contract; as noted above, it is the United States that determines and distributes the relators' shares. It hardly matters, though, because Plaintiff's unrelated *qui tam* action was dismissed, and he was not a party to the FCA settlement agreement. His breach of contract claim should therefore be dismissed under Rule 12(b)(6).

As for Plaintiff's allegation that Amgen breached the implied covenant of good faith and fair dealing, such a claim requires the existence of a contract. *See Denny Const., Inc. v. City & Cty. of Denver ex rel. Bd. of Water Comm'rs*, 170 P.3d 733, 737 (Colo. App. 2007), *rev'd on other grounds*, 199 P.3d 742 (Colo. 2009) (recognizing that "the implied covenant of good faith and fair dealing is a contractual covenant"). Here, Plaintiff does not sufficiently allege the existence of a valid contract, and therefore he cannot maintain a claim for an implied breach of that contract. This claim should also be dismissed.

### B. Fraud and Fraudulent Concealment

The elements of fraud under Colorado law are:

> (1) a false representation of a material existing fact; (2) knowledge on the part of the one making the representation

> that it was false; (3) ignorance on the part of the one to
> whom the representation was made of its falsity; (4) the
> representation was made with an intention that it be acted
> on; and (5) the representation resulted in damage.

*Bangert Bros. Const. Co., Inc. v. Kiewit Western Co.*, 310 F.3d 1278, 1286 n. 4 (10th

Cir. 2002) (quoting *Southeastern Colo. Water Conservancy Dist. v. Cache Creek Mining*

*Trust*, 854 P.2d 167, 172 (Colo. 1993)). The elements of fraudulent concealment are

functionally identical. *See BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 109 (Colo.

2011).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge,

and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Under this standard, a plaintiff must "set forth the time, place, and contents of the false

representation, the identity of the party making the false statements and the

consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*

*of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (citations omitted).

Here, Plaintiff alleges

> Defendants' action, inaction, and or omission (with held [sic]
> evidentiary & relator share) set forth constitute fraudulent
> misrepresentations, self-dealing, and purposeful and
> fraudulent concealment of material fact information to the
> ultimate determine of plaintiff, who relied upon Defendants'
> fraudulent statements, representations, and omissions
> before and after the 2012 large settlement.

(Docket No. 1 at ¶ 108.) The Court finds this allegation to be merely conclusory and not

entitled to the assumption of truth. Moreover, Plaintiff fails to meet any of the

requirements of Rule 9(b)'s heightened pleading standards, as his Complaint is devoid

of any specific information about the nature of allegedly fraudulent statements. Therefore, the Court recommends that this claim be dismissed.

### C. Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty are: "1) the existence of a fiduciary relationship between plaintiff and defendant; 2) defendant's breach of the fiduciary duty; and 3) damages as a result of the breach." *F.D.I.C. v. Refco Grp*., Ltd., 989 F. Supp. 1052, 1080 (D. Colo. 1997) (citations omitted). "A fiduciary relation[ship] exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation[ship]." *Moses v. Diocese of Colo.*, 863 P.2d 310, 321 (Colo.1993) (citation and quotation marks omitted). Plaintiff does not plausibly allege that Amgen was ever his fiduciary, and therefore his claim cannot stand.

### D. Conversion

Conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another.*" Glenn Arms Associates v. Century Mortg. & Inv. Corp*., 680 P.2d 1315, 1317 (Colo. Ct. App.1984). "Predicates to a successful claim for conversion are the owner's demand for the return of the property, and the controlling party's refusal to return it." *Id.* Here, Plaintiff does not plausibly allege that Amgen had control over any of Plaintiff's personal property, so the claim fails.

### E. Intentional and Negligent Infliction of Emotional Distress

To prevail on a claim for intentional inflection of emotional distress, also known

as a claim for outrageous conduct, a plaintiff must show that (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff severe emotional distress. *Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1206 (D. Colo. 2015) (citing *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003)). With regard to the first element, the Court must determine as a matter of law whether "reasonable persons could differ on whether the defendant's conduct was sufficiently outrageous" before submitting the claim to the jury. *Id.* Outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999).

Plaintiff alleges that the Defendants "knew or reasonably should have known that the failure to include him in settlement procedures and to exercise due care toward plaintiff and due care in the performance of the employment agreement would cause plaintiff severe emotional harm." (Docket No. 1 at ¶ 135.) He claims that this caused him to feel "anger, fear, shock embarrassment, and humiliation." (*Id.*)

The Court finds that no reasonable person could conclude, based on these allegations, that Amgen's alleged conduct was extreme and outrageous. As Amgen notes, it did not have the ability to include Plaintiff in the settlement agreement, and the government controlled the settlement funds. Also, Plaintiff's *qui tam* case had already been dismissed for failure to prosecute. Finally, any claim arising out the "performance of the employment agreement" is barred as a matter of law for the reasons set forth

above. In short, nothing Amgen is alleged to have done rises to the level of outrageous conduct.

### F. Negligent Infliction of Emotional Distress

To make a negligent infliction of emotional distress claim, "'a plaintiff must show that the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought.'" *Matthys*, 104 F. Supp. 3d at 1206 (quoting *Draper v. DeFrenchi–Gordineer*, 282 P.3d 489, 496–97 (Colo. App. 2011)). "The plaintiff must show that any physical injury or long-continued emotional disturbance 'was caused by [his] fear for [his] own safety.'" *Id.* (quoting *Scharrel v. Wal–Mart Stores, Inc*., 949 P.2d 89, 93 (Colo. App. 1997)).

Plaintiff alleges that Amgen's conduct caused him to have a heart attack. (Docket No. 1 at ¶ 147.) The Court concludes that this allegation is not plausible. Also, Plaintiff fails to state any claim that Amgen was negligent. Nor does he allege that he was put in fear for his physical safety. This claim should be dismissed.

For these reasons, the Court recommends that Plaintiff's claims against Amgen be dismissed.

### b. The Federal Defendants' Motions (Docket Nos. 42 & 43)

The Federal Defendants move to dismiss Plaintiff's contract claims for lack of subject matter jurisdiction under the Tucker and Little Tucker Acts. They also move for summary judgment on Plaintiff's tort claims.

### i. Motion to Dismiss (Docket No. 42)

#### A. Standard of Review

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006)

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the

complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

### B. Analysis

The Federal Defendants argue that Plaintiff's claims for breach of contract and breach of implied covenant of good faith and fair dealing should be dismissed under the "Tucker Act" and "Little Tucker Act." The Court agrees.

The Tucker Act, 28 U.S.C. § 1491, provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." Id . § 1491(a)(1). The Little Tucker Act, 28 U.S.C. § 1346(a)(2), grants federal district courts concurrent jurisdiction over contract claims against the government where plaintiffs seek no more than $10,000.00 in damages. Thus, the Tucker Act "'vests exclusive jurisdiction' with the Court of Federal Claims for claims against the United States founded upon the Constitution, Acts of Congress, executive regulations, or contracts and seeking amounts greater than $10,000." *Burkins v. United States*, 112 F.3d 444, 449 (10th Cir. 1997).

With this in mind, there are two obvious problems with Plaintiff's contract claims. First, Plaintiff seeks damages of over $100,000,000, which exceeds the $10,000 jurisdictional limit of this Court. Thus, Plaintiff's claims could only been brought in the Court of Federal Claims. Second, Plaintiff does not plausibly allege that he ever had a contractual relationship with the Federal Defendants. He was not a party to the

settlement agreement. In fact, his *qui tam* complaint had been dismissed before the agreement was signed. Furthermore, his *qui tam* claims were unrelated to those that were resolved by the settlement agreement, which means that FCA's "alternate remedy" provision is inapplicable. *See* 31 U.S.C. § 3730(c)(5). *See also U.S. ex rel. Newell v. City of St. Paul, Minn*., 728 F.3d 791, 799 (8th Cir. 2013) ("As defined in § 3730(c)(5), the term alternate remedy' does not include the government's settlement of unrelated claims against unrelated parties in unrelated lawsuits."). Therefore, the government owed him no duty or obligation to include him in the settlement agreement, or share with him the settlement proceeds. Accordingly, Plaintiff's breach of contract and breach of implied covenant and good faith and fair dealing should be dismissed for lack of jurisdiction against the Federal Defendants.

### ii. Motion for Summary Judgment (Docket No. 43)

The Federal Defendants seek summary judgment that Plaintiff's five remaining tort claims are time-barred.

### A. Standard of Review

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the dispute under the applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The burden shifts to the party opposing summary judgment once the movant

has made its initial showing.

A movant who does not have the burden of proof at trial must show the absence of a genuine fact issue. Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Wausau Bus. Ins. Co. v. U.S. Motels Mgmt., Inc*., 341 F. Supp. 2d 1180, 1182–83 (D. Colo. 2004) (citations omitted). "[T]he nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall*, 935 F.2d at 1111. *See also World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985) (only admissible evidence may be considered when ruling on a motion for summary judgment).

The Court must view the factual record and draw all reasonable inferences therefrom in the light most favorable to the party opposing the motion for summary judgment. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962). However, the Court "must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by the party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (internal quotation marks omitted). Thus, while "[t]he nonmovant is given wide berth to prove a factual controversy exists," *Davidson v. Am. Online, Inc*., 337 F.3d 1179, 1182 (10th Cir. 2003) (quotation omitted), the evidence must be based on more than conjecture, speculation, or surmise. *Bones v. Honeywell Int'l, Inc*., 366 F.3d 869, 875 (10th Cir. 2004). "Affidavits or other evidence offered by a

nonmovant must create a genuine issue for trial; . . . it is not enough that the evidence be merely colorable or anything short of significantly probative." *Hall*, 935 F.2d at 1111 (citation and internal quotation marks omitted). Thus, the Court must determine whether Plaintiff has met his burden of presenting sufficient facts to overcome the Federal Defendants' motion.

### B. Analysis

The Federal Defendants argue that summary judgment in their favor is warranted because Plaintiff's tort claims are barred by the Federal Tort Claims Act's ("FTCA") two-year statute of limitations. The FTCA bars any tort claim against the United States unless it is presented to the appropriate federal agency within two years of the claim's accrual, and filed within six months after notice of denial of the claim by that agency. 28 U.S.C. § 2401(b). Because the FTCA represents a waiver of the sovereign immunity of the United States, it must be strictly construed. *Pipkin v. U.S. Postal Serv.*, 951 F.2d 272, 275 (10th Cir. 1991).

Federal law governs the point at which a claim accrues under the FTCA. *See Hoery v. United States*, 324 F.3d 1220, 1222 (10th Cir. 2003). "In the Tenth Circuit, the general rule for accrual of an FTCA claim outside the medical malpractice context is the 'injury-occurrence rule.'" *Cannon v. United States*, 338 F.3d 1183, 1190 (10th Cir. 2003). Thus, unlike the state of Colorado statutes of limitations discussed above, which provide that a tort claim accrues on the date of the injury **or** when that injury could have reasonably been discovered, an FTCA tort claim is considered to accrue on the date of the injury's occurrence, and the "discovery rule" applies only in the "exceptional case"

where a reasonably diligent plaintiff could not immediately know of the injury and its cause. *Id.* (quoting *Plaza Speedway Inc. v. United States*, 311 F.3d 1262, 1267–68 (10th Cir. 2002).

In the case at bar, although Plaintiff filed his Complaint on March 10, 2017 (Docket No. 1), his alleged injury occurred on December 13, 2012, when the settlement agreement was executed. He knew in March 2012 that a settlement agreement was in the works. (Docket No. 22-7.) Therefore, no exceptional circumstances exist that would justify applying the discovery rule. Plaintiff's administrative tort claim was received on February 19, 2016. (Docket No. 43-1.) This is beyond the December 14, 2014 deadline mandated by the FTCA. Plaintiff also did not file suit within six months of March 17, 2016, the date of the government's final, written denial. (*Id*.) Thus, Plaintiff's tort claims are untimely.

Finally, the Court agrees with the Federal Defendants that equitable tolling is not warranted in this case. The FTCA's time bars are nonjurisdictional and subject to equitable tolling. *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015). To successfully claim the benefits of equitable tolling, Plaintiff bears the burden of showing that he pursued his claims, but that some extraordinary circumstances stood in his way. *Barnes v. United States*, 776 F.3d 1134, 1150 (10th Cir. 2015). Nothing in the record indicates that Plaintiff's failure to file his lawsuit in a timely manner was due to any extraordinary circumstances. His argument that he was waiting for the Ninth Circuit Panel's decision to be issued is unavailing because the only issue there–whether he could pursue *qui tam* claims without counsel–is unrelated to the tort claims now before the Court. Moreover, Plaintiff fails to substantiate his claim that he is subject to

23

"continuing harm." His alleged injury is a discrete one: the failure to receive funds from the December 2012 settlement agreement.

Accordingly, the FTCA's statute of limitations bars Plaintiff's tort claims against the Federal Defendants. Because he cannot remedy the untimeliness by refiling, Plaintiff's claims should be dismissed with prejudice.

### c. Plaintiff's "Unopposed" Motions (Docket Nos. 15, 16, & 17)

On May 1, 2017, Plaintiff filed three motions, two of which are dispositive in nature, that are described as "unopposed." (Docket Nos. 15, 16, & 17.) In each motion, Plaintiff states that Amgen's counsel did not oppose the relief sought and that the Federal Defendants "waived limited sovereign immunity and have elected not to respond to the request to confer when this motion was filed."

That same day, Amgen filed a notice with the Court (Docket No. 21) indicating that it did, in fact, oppose the motions, and clarified that the

> only request by May that Amgen does not oppose is for the Court to take judicial notice of prior court orders and rulings against Mr. May from various courts, including Denver District Court, United States District Court for the Central District of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.

Plaintiff's apparent misrepresentations to the Court are disconcerting. Be that as it may, the relief requested in the motions is foreclosed by the Court's recommendation that Plaintiff's Complaint be dismissed. Therefore, the Court further recommends that Plaintiff's motions (Docket Nos. 15, 16, & 17) be denied as moot.

### d. Amgen's Motion for Attorney Fees

Finally, Amgen states that it is entitled to attorney fees under Colo. Rev. Stat. §

13-17-102 and 28 U.S.C. § 1927.

Colorado law provides mandates as follows:

> The court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney **or party** brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment or if it finds that an attorney **or party** unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under the Colorado rules of civil procedure or a designation by a defending party under section 13-21-111.5(3) that lacked substantial justification. As used in this article, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

Colo. Rev. Stat. § 13-17-102(4) (emphasis added). "A vexatious claim or defense is one brought or maintained in bad faith. Bad faith may include conduct that is arbitrary, vexatious, abusive, or stubbornly litigious, and may also include conduct aimed at unwarranted delay or disrespectful of truth and accuracy." *Zivian v. Brooke–Hitching*, 28 P.3d 970, 974 (Colo. Ct. App. 2001). A claim lacks substantial justification if it "lacks supporting evidence or the party pursing the claim cannot make a rational argument in its support based on the evidence or governing law." *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1219 (10th Cir. 2010).

In determining when an award of attorney fees is appropriate, Colo. Rev. Stat. § 13–17–103(1) directs that the Court "shall consider the following factors, among others, in determining whether to assess attorney fees," including, for example, "[t]he extent of any effort made to determine the validity of any action or claim before said action or claim was asserted," "[w]hether or not the action was prosecuted or defended, in whole

or in part, in bad faith," and "[w]hether or not issues of fact determinative of the validity of a party's claim or defense were reasonably in conflict." *Id.* § 13–17–103(1)(a), (e), & (f). Attorney fees can be assessed against a *pro se* plaintiff who knew or reasonably should have know that his action was substantially vexatious. *See Bockar v. Patterson*, 899 P.2d 233, 235 (Colo. App. 1994).

Considering the appropriate factors, the Court recommends that Amgen should be awarded its reasonable attorney's fees and costs related to defending this action. First, Plaintiff clearly made little to no effort to determine the validity of his claims for relief. Plaintiff failed utterly to make a rational argument that he was entitled to a portion of the *qui tam* settlement proceeds, and his other allegations have been raised and rejected in other forums. Second, Plaintiff did not seek to amend his Complaint in response to Amgen's motion to dismiss, but instead filed a long and borderline incomprehensible response. Third, Plaintiff had all the facts before him necessary to determine that his claims were frivolous. Fourth, while the Court does not have specific information relating to the financial positions of the parties, it is undeniable that Plaintiff is willing to expend money to continue to pursue his vexatious litigation. Fifth, Plaintiff's claims were brought in bad faith, a conclusion that is supported by his documented history of filing meritless motions and appeals, in this and other litigation. Sixth, there are no disputed facts that support Plaintiff's claims. Finally, because the Court recommends that Amgen's motion be granted in its entirety and all of Plaintiff's claims be dismissed, Plaintiff has failed to prevail on any of his claims.

For these reasons, the Court recommends that Amgen be awarded its reasonable attorney fees and costs incurred in defending this lawsuit. The Court

declines to address whether Amgen is also entitled to fees under 28 U.S.C.A. § 1927.

### III. RECOMMENDATION

Based upon the foregoing, it is hereby **RECOMMENDED** as follows:

• That Defendant Amgen USA Inc.'s Motion to Dismiss (Docket No. 22) and Motion for Attorney Fees (Docket No. 25) be **GRANTED**;

• That Defendants United States of America, U.S. Department of Justice, and U.S. Department of Health and Human Services' Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)(b) (Docket No. 42) and Partial Motion for Summary Judgment (Docket No. 43) be **GRANTED**;

• That Plaintiff's Complaint (Docket No. 1) be **DISMISSED WITH PREJUDICE**; and

• That Plaintiff Samuel J. May's Unopposed Motion for Declaratory Judgment Directing Payment of Qui Tam Share of Alternate Remedy Proceeds (Docket No. 15); Unopposed Notice of Motion and Motion for an Evidentiary Hearing Pursuant to 28 U.S.C. § 2202 and 31 U.S.C. § 3730(c)(2)(B), in Support of Concurrent Motion for Declaratory Judgment Directing Payment of Qui Tam Share (Docket No. 16); and Notice of Motion and Motion for Declaratory Relief Requesting Judicial Notice of the Dismissed Qui Tam Complaint in Support of Motion for Relator Share and Hearing (Docket No. 17) be **DENIED** as moot.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve**

and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Dated:  February 26, 2018  
       Denver, Colorado

s/ Michael J. Watanabe  
Michael J. Watanabe  
United States Magistrate Judge